# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**FREDERICK BARROW (#358142)**                    **CIVIL ACTION**

**VERSUS**                                                      **NO. 18-442-JWD-RLB**

**DARYL VANNOY, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 20, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**FREDERICK BARROW (#358142)**                    **CIVIL ACTION**

**VERSUS**                                        **NO. 18-442-JWD-RLB**

**DARYL VANNOY, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on a Motion to Dismiss filed on behalf of defendants Col. Luke Reams and Major Robert Roe (R. Doc. 89). The motion is not opposed.

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against numerous defendants alleging that his constitutional rights have been violated due to unconstitutional conditions of confinement and the use of excessive force.[1] He prays for injunctive, declaratory and monetary relief.

The moving defendants first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's claim against them in their official capacities. In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons"

---

[1] As to defendants Lt. Tillery, Maj. Hooker, Lt. Allen, John Doe 1 and John Doe 2, a review of the record reveals that these defendants have not been served because service was not accepted by the Department of Corrections. *See* R. Doc. 42. Pursuant to the requirements of Rule 4(m) of the Federal Rules of Civil Procedure, failure to serve a defendant within 90 days of commencement of an action is cause for dismissal of that defendant from the proceeding. Although a *pro se* plaintiff may rely on service by the U.S. Marshal, he may not remain silent and do nothing to effectuate such service, and should attempt to remedy any defects of which he has knowledge. The plaintiff was informed of the lack of service, and has failed to take action to direct service on defendants Lt. Tillery, Maj. Hooker, Lt. Allen, John Doe 1 and John Doe 2. *See* R. Doc. 42. It is appropriate, therefore, that the plaintiff's claims asserted against defendants Lt. Tillery, Maj. Hooker, Lt. Allen, John Doe 1 and John Doe 2 be dismissed, without prejudice, for failure of the plaintiff to effect timely service upon them.

within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25.

Accordingly, the plaintiff's claims asserted against the defendants in their official capacities, for monetary damages, are subject to dismissal. In contrast, the plaintiff's claims for monetary damages asserted against the defendants in their individual capacities remain viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id*. at 29. The plaintiff's claims for injunctive and declaratory relief also remain viable. Of course, the plaintiff must prove a deprivation of a constitutional right to obtain any relief.

Turning to the plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, the defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that,

"where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*. at 679.  "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id*. (citation omitted).  Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

With regards the moving defendants, in his Complaint as amended, the plaintiff alleges that for 20 years he has chosen to remain in a one-man cell.  Beginning in 2009, 40 additional beds were added to the dormitories.  In 2012, the extended lockdown cells in the Jaguar unit were converted to two-man cells.  The plaintiff was transferred to another unit and refused to return in 2014, 2015, and again in 2017.  Each time the plaintiff was sent to administrative segregation at Camp J.

On December 12, 2017, the plaintiff was moved from Camp J to Camp C, and he was told to prepare to go to the Jaguar unit.  When the plaintiff asked defendant Col. Reams to speak to a social worker, defendant Reams threatened to spray the plaintiff with mace and directed Major Smith to do so.  The plaintiff attempted to explain to defendant Reams why he needed to see a social worker, but defendant Reams ignored him and again directed Major Smith to spray

the plaintiff with mace and asked him why it had not been done earlier. The plaintiff was not sprayed with mace and eventually contacted a social worker in order to be put on standard suicide watch and avoid being transferred to the Jaguar unit. These actions were repeated on December 15, 2017, December 26, 2017, and January 3, 2018.

Just after being transferred to Camp C on December 12, 2017, the plaintiff was told by defendant Roe that he could make a phone call after he was taken off of standard suicide watch. When defendant Roe returned to work on December 15, 2017, he did not allow the plaintiff to make a phone call and left the plaintiff in administrative segregation even though no disciplinary report had been issued. Defendant Roe attempted to have the plaintiff bunk with another inmate in administrative segregation. The plaintiff asked to declare himself a medical emergency because he felt dizzy since he had not eaten since December 10, 2017.

Defendant Roe removed the plaintiff from his cell and made the plaintiff stand in the shower for three hours as defendant Roe searched his cell. Defendant Roe took some of the plaintiff's personal items when his shift ended. The plaintiff was later returned to his cell by someone on the nightshift.

While housed at Camp C, the plaintiff was threatened by defendant Roe. On December 26, 2017, defendant Roe issued the plaintiff a disciplinary report for requesting to see mental health when defendant Roe again attempted to have the plaintiff bunk with another inmate in administrative segregation.

On February 1, 2018, the plaintiff was sent to administrative segregation in the CBB by defendant Major Roe. On February 19, 2018, the plaintiff was sprayed with a chemical agent after refusing to be double bunked in his cell in administrative segregation. After the plaintiff was sprayed with the chemical agent he was forced to double bunk with another inmate.

In response to the plaintiff's allegations, the moving defendants have asserted that they are entitled to qualified immunity in connection with the plaintiff's claims. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.*

Undertaking the qualified immunity analysis, the Court finds that the defendants' motion should be granted. Specifically, the Court concludes that the plaintiff has failed to state a claim, against the moving defendants, upon which relief may be granted.

Any complaints the plaintiff may have that he was the object of verbal abuse, harassment, and threats by defendants Reams and Roe, without more, are not actionable under § 1983. *See Orange v. Ellis,* 348 F. App'x. 69, 72 (5th Cir. 2009); and *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir. 1983). To the extent the plaintiff is complaining about his transfer from Camp J to Camp C and from Camp C to Camp CBB, his allegations fail to state a claim for deprivation of due process of law arising out of his change in housing. Prison officials exercise sole discretion over inmate unit placement, and inmates do not have a constitutionally protected property or liberty interest in housing in certain facilities. *See Moody v. Baker,* 857 F.2d 256, 257–58 (5th Cir. 1988).

With regards to the plaintiff's complaints regarding placement in administrative segregation without having received a disciplinary report, the failure of prison officials to follow prison rules or regulations does not amount to a violation of the plaintiff's constitutional rights. *Jackson v. Cain*, 864 F.3d 1235, 1252 (5th Cir. 1989).  Additionally, placement in segregated confinement does not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.  *See Sandin v. Connor, 515 U.S. 472, 485–86 (1995)*.  Since *Sandin*, the Fifth Circuit has consistently held that, "administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest."  *See Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (*citing Pichardo v. Kinke*r, 73 F.3d 612 (5th Cir. 1996)); *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995).

The denial of one opportunity to use the phone by defendant Roe also does not implicate a protected liberty interest.  *See Lewis v. Dretke*, 54 F. App'x 795 (5th Cir. 2002) (concluding that 90-day deprivation of telephone privileges did not implicate a protected liberty interest).

To the extent the plaintiff is alleging that the disciplinary report issued by defendant Roe on December 26, 2017 was false, the issuance of a false disciplinary report, without more, fails to state a claim of federal constitutional dimension cognizable under 42 U.S.C. § 1983. Specifically, the law is clear that the mere issuance of one or more false disciplinary reports and the imposition of resulting punishment does not alone amount to a constitutional violation.  *See Grant v. Thomas*, 37 F.3d 632 (5th Cir. 1994), *citing Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984) ("[T]here is no due process violation if a prisoner, who is falsely accused of charges, is given an adequate state procedural remedy to challenge the accusations").

Turning to the search performed by defendant Roe, to the extent the plaintiff is asserting that confinement in the shower cell for three hours was cruel and unusual punishment, the Fifth Circuit has held that a short period of confinement under unpleasant conditions does not violate

the constitution. *See Davis v. Scott,* 157 F.3d 1003, 1004-06 (5th Cir.1998).  As to the search

itself, the Court notes that while imprisoned persons enjoy many protections of the Constitution,

it is clear that imprisonment carries with it the circumscription or loss of many significant rights.

*See Bell v. Wolfish*, 441 U.S. 520, 545 (1979).  Loss of freedom of choice and privacy are

inherent incidents of confinement.  The Fourth Amendment proscription against unreasonable

searches and seizures does not apply within the confines of the prison cell.  The recognition of

privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept

of incarceration and the needs and objectives of penal institutions.  *Hudson v. Palmer*, 468 U.S.

517, 526 (1984); *United States v. Ward*, 561 F.3d 414, 419 (5th Cir. 2009) (stating that "as a per

se rule a prisoner cannot invoke the Fourth Amendment because society is not prepared to

recognize a prisoner's expectation of privacy in his prison cell").

 With regards to the property removed from the plaintiff's cell by defendant Roe, pursuant

to well-established federal jurisprudence, an unauthorized negligent or even intentional wrongful

deprivation of property by state employees does not amount to a violation of the procedural

requirements of due process if a meaningful post-deprivation remedy for the loss is available.

*Hudson v. Palmer,* 468 U.S. 517, 533 (1984); *Parratt v. Taylor,* 451 U.S. 527, 542 (1981).

Further, the burden is on the complainant to show that available post-deprivation remedies are

not adequate.  *Marshall v. Norwood,* 741 F.2d 761, 764 (5th Cir. 1984).  In the instant case, the

plaintiff has not alleged that state post-deprivation remedies are unavailable to him or are

inadequate.  To the contrary, it is recognized that Louisiana law provides ample remedies under

which the plaintiff can proceed against the defendant for recovery of his property or for

reimbursement for its loss.  *Id.* at 763.

 As to any attempts by defendants Reams and Roe to have the plaintiff bunk with another

inmate, in *Bell v. Wolfish,* 441 U.S. 520, 542 (1979), the United States Supreme Court indicated

that there is no constitutional principle requiring "one man, one cell," and that the "double

celling" of inmates is not a *per se* unconstitutional condition.  Construing the plaintiff's "double

celling" claim in the context of a civil rights action, it has no merit.  *See Rhodes v. Chapman*,

452 U.S. 337, 349 (1981); *Duncan v. Puckett*, 91 F.3d 137, 1996 WL 400039 (5th Cir. May 27,

1996) (upholding the dismissal, as frivolous, of an inmate's claim of being placed "in a single

cell with another inmate"); *Thompson v. Stalder*, 2008 WL 874138, *7 (M.D. La. April 1, 2008)

(finding that "the mere fact that an inmate may be double-celled for a period of time does not, as

a matter of law, state a claim of constitutional dimension"); *Higgins v. Jefferson Parish Prison*,

1988 WL 24137, *3 (E.D. La. March 7, 1988) (claim of being housed in a cell with another

inmate dismissed as frivolous).

        Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to

invoke the supplemental jurisdiction of this court over potential state law claims, a district court

may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel

or complex issues of state law, if the claims substantially predominate over the claims over

which the district court has original jurisdiction, if the district court has dismissed all claims over

which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the

instant case, having recommended dismissal of the majority of plaintiff's claims and defendants

over which the district court has original jurisdiction, the Court further recommends that the

exercise of supplemental jurisdiction on any state law claims be declined.

## RECOMMENDATION

        It is the recommendation of the Magistrate Judge that defendants Lt. Tillery, Maj.

Hooker, Lt. Allen, John Doe 1 and John Doe 2 be dismissed, without prejudice, for failure to

timely effect service upon them.  It is further recommended that the defendants' Motion to

Dismiss (R. Doc. 89) be granted, dismissing the plaintiff's claims against defendants Reams and

Roe, with prejudice.  It is further recommended that the plaintiff's Motion for Summary

Judgment (R. Doc. 88) be denied, the Court decline the exercise of supplemental jurisdiction

over the plaintiff's potential state law claims, and this matter be dismissed.

     Signed in Baton Rouge, Louisiana, on June 20, 2019.


**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**